## ALLING *v.* THE CITIZENS' BANK et al.

The decision in *Bertoli* v. *Citizens' Bank,* 1 An. 119, that no sale, whether judicial, forced or voluntary, of property mortgaged to the Citizens' Bank, can in any manner affect the rights secured to that institution by the 24th section of its charter, applies to the case of a sale made without the consent of the bank and for a sum insufficient to satisfy their claim.

APPEAL from the Fifth District Court of New Orleans, *Buchanan,* J. J. and *H. H. Strawbridge,* for the plaintiff. *Pitot,* for the appellants. The judgment of the court *(King,* J. absent,) was pronounced by

ROST, J. The plaintiff has enjoined an order of seizure, obtained by the defendants on two mortgages subscribed by him in their favor.

The facts of this controversy are identical with those of *Bertoli* against the same defendants, reported in 1 An. p. 119, with the single exception, that, in *Bertoli's* case, the sale of the property mortgaged was made without the participation or knowledge of the bank, while in this the bank authorized the syndic to sell, on condition that the purchaser should assume all the obligations of the insolvent to them, and take the property subject to the stock mortgage. The District court considered that, although the defendants may not be bound by the proceedings in bankruptcy of their debtors, they may waive that privilege, and, being of opinion that they had done so in this case and made themselves parties to the proceedings, perpetuated the injunction. The defendants have appealed.

The defendants authorized the syndic of the creditors of *Donlin,* the insolvent debtor, to sell the property mortgaged to them, on condition that the purchaser should assume the stock mortgage and pay all sums actually due them. After this authorization, *Hoffman,* the legal adviser of the syndic, and one of the commissioners of the bank, called upon the cashier, and presented to him a manuscript advertizement of the syndic's sale, with a blank space left in it for the insertion of a description of the nature and amount of the obligations due the Citizens' Bank. The cashier inserted in this blank, the description of a stock

note of $1,200, maturing on the 1st of May, 1847, and returned the advertizement, which was then duly published. After the legal delays, the property with h e stock upon it, was adjudicated to the plaintiff, for a sum more than sufficient to pay all the claims which the defendants really had upon it. The syndic, having raised all the mortgages on the property except the stock mortgages, executed the act of sale to the purchaser, and received the price in money and notes, including the stock note. This sale was passed by a notary, who was then the acting president of the board of the Citizens' Bank, and the title papers of *Donlin* were delivered to him by the officers of the bank, for the purpose of enabling him to pass it. *Lesassier*, the cashier, testifies that about this time he sent to the syndic a memorandum of the cash indebtedness of *Donlin*, but cannot state whether he mentioned therein the nature of the indebtedness, and that it was secured by mortgage.

In due course of administration the syndic filed his tableau of distribution, on which he placed the defendants as ordinary creditors for $1,698. After the usual advertizements, this tableau was homologated, without opposition from the defendants, and, under the order of court, the assetts in the hands of the syndic, with the exception of the last note furnished by the plaintiff, were paid over to the creditors.

The plaintiff, having subsequently called upon the defendants for a transfer of the stock to him on their books, was met by the cashier with a demand for the sum of $1,698, alleged to be due the bank and secured on the property sold by a mortgage subsequent in date to the stock mortgage. This debt and mortgage appearing to exist on the books of the bank, they declined to transfer the stock; and on the refusal of the plaintiff to pay the sum claimed, took out against him for this amount, and for that of the stock note, the order of seizure which he has enjoined.

The reason given by the cashier why he did not mention the mortgage in the advertizement—because his understanding was that it should be paid in cash, and that the syndic was to pay the money to the bank, is quite unsatisfactory, and can in no manner benefit the defendants. It shows that the bank had joined in the proceedings of the other creditors, and looked to the syndic for payment. This arrangement as made, was perfectly legal; it enabled the defendants to collect, without any expense or loss of time, what was due to them, and to obtain a solvent instead of an insolvent stockholder. It was faithfully carried into effect by the syndic, and a sufficient sum realized by the sale to satisfy their entire claim; that this sum was not thus applied, is attributable exclusively to their negligence. Their claim was not filed with the syndic as a mortgage claim, and they suffered the tableau to be homologated without making opposition, notwithstanding the cashier's declaration that he looked to the syndic for payment.

It is true we said in the case of *Bertoli*, that no sale, whether judicial, forced, or voluntary, of property mortgaged to the Citizens' Bank, can in any manner affect the rights secured to that institution by the 24th section of their charter. But this of course applies to a sale made without the consent of the bank, and for a sum insufficient to satisfy their claim. Here the bank was a party to the proceedings of the creditors. On the faith of their authorization that the property should be sold, the plaintiff purchased, and the price he paid, though more than sufficient to pay the bank debt, was lost to them through the negligence of their officers. It would be unjust to throw this loss upon an honest purchaser, and there is no warrant of law for doing so.                    *Judgment affirmed.*